ADOLPH APTON, Plaintiff, *v.* BARCLAYS BANK, LTD., Defendant.

Supreme Court, Special Term, Kings County, January 19, 1948.

*Benjamin Levin* and *Julius B. Weigert* for plaintiff.

*Clifton S. Thomson* and *John D. Kernan, Jr.,* for defendant.

FROESSEL, J. The defendant, in an action to recover the sum of $28,564.68, with interest from April 2, 1938, moves, pursuant to rule 107 of the Rules of Civil Practice, for judgment dismissing the complaint, and each and every cause of action therein alleged, on the ground that said causes did not accrue within the time limited by law for the commencement of an action thereon.

It is undisputed that the plaintiff, in 1935, was an Austrian citizen of the Jewish faith resident in Vienna, at which time he opened a cash account in English currency with the defendant, a British banking corporation, in London, England. The complaint alleges six causes of action founded on breach of contract with respect to, and wrongful conversion of, the funds in said bank account. The seventh cause of action is based on the defendant's refusal to accept funds offered to it in London in March, 1938, by a third person for deposit in plaintiff's account.

The gravamen of the first six causes of action is that the plaintiff, in or about the month of April, 1938, "* * * was a customer and a depositor in the defendant bank located in the City of London, England"; that the defendant, in or about March of 1938, in breach of its obligation to the plaintiff under English law, and in violation of plaintiff's instructions, not to disclose any information relating to his said account, did make such disclosure, as a result of which the German invaders apprehended, imprisoned and incarcerated plaintiff, directed and commanded him to instruct defendant to transfer the balance of his said account to the " Reichsbank " in Vienna, Austria, threatening him with severe bodily injury and death in the event of noncompliance; that because of such threats, plaintiff signed, and caused to be transmitted to the defendant bank, written instructions to remit said balance immediately to said " Reichsbank "; and that the defendant bank, with knowledge of the circumstances, wrongfully and illegally complied with plaintiff's said instructions in or about April, 1938, when said balance was con-

verted by the German authorities. The papers before me also show that the plaintiff left Austria for Yugoslavia on October 3, 1938, and thereafter arrived in the city and State of New York on October 29, 1938, since which time he has remained here.

It appears that a prior similar action was instituted by the plaintiff in January, 1941, by an attempted personal service of process upon the defendant in New York. The latter moved to vacate the service of such process upon the ground that it was not doing business in the State of New York. The motion was granted (28 N. Y. S. 2d 469), and affirmed in the Appellate Division (265 App. Div. 836), which refused leave to appeal to the Court of Appeals (265 App. Div. 954). The present action was instituted in August, 1947, more than six years after the dismissal of the first, and more than nine years after the acts complained of. This time, jurisdiction was obtained by means of a warrant of attachment, which is what might have been done in the first place, seven years ago.

Defendant's motion is predicated upon the claim that under the laws of England, where the claim arose (Limitation Act, 1939, 2 & 3 Geo. 6, ch. 21), and if not of England then of Austria (Austrian Civil Code, § 1489 [Das Allgemeine bürgerliche Gesetzbuch]) (1) the time for bringing an action on contract or tort had expired before the commencement of the present action, and (2) the periods of limitation were not tolled or suspended in favor of the plaintiff.

Plaintiff's attorneys, in their brief, submit that " he should not be compelled to take an affirmative position on the question as to whether the causes of action arose in England or in Austria, and the further question as to whether English or Austrian law controls the period of limitation and all other questions relating thereto," inasmuch as this burden rests upon the defendant. In support of their claim that the present action is not barred, however, they do advance tenuous arguments, a discussion of all of which would unduly or unnecessarily extend the length and scope of this opinion to unreasonable proportions. Very briefly, plaintiff's several contentions may be summarized as follows: (1) The English Statute of Limitations does not apply, as the claims in question did not arise in England; (2) if the English statute applies then it has been tolled; (3) if the Austrian statute applies, then the thirty-year Austrian statute (Austrian Civil Code, §§ 1478, 1479) applies and not the three-year statute (§ 1489); (4) if the three-year Austrian statute applies, then it has been tolled, suspended or revived; and (5) in any event, by reason of the necessity of a demand, the causes of action actually

accrued in the State of New York, on the commencement of this present action, and the New York Statute of Limitations applies.

I have read with care the thorough and well-prepared briefs submitted on both sides, and given due consideration to the English, Austrian and American authorities referred to therein, as well as to the statutes submitted and the opinions of counsel with respect thereto. To review them here would serve no useful purpose.

Upon the entire record, I am constrained to conclude that the English Statute of Limitations applies, which outlaws, after the expiration of six years from the date of accrual, " actions founded on simple contract or on tort " (2 & 3 Geo. 6, ch. 21, § 2, subd. [1], par. [a]). The first six causes of action are not to recover a bank deposit, but for damages arising out of breach of contract and tort due to defendant's alleged wrongful payment to the " Reichsbank " in March-April, 1938. The bank account in question was opened in defendant's bank in London. Plaintiff, in his affidavit verified August 21, 1947, concedes that the defendant bank had no branch in Austria. Plaintiff's brief, at page 29, adds: " The defendant had no branch in Austria, did not do business in Austria and did not have any property in Austria." In his said affidavit to secure the warrant of attachment, plaintiff claims that the disclosure as to his bank account was contained in a letter of the defendant bank, which he recognized by the letterhead, the size of the paper, and other characteristics of the stationery; he could read the heavy print of the letterhead: " BARCLAY'S BANK, LONDON." If, indeed, there was a breach of either legal duty or contract, it consisted of the writing of the letter in London, the honoring of plaintiff's instructions in London, the transmission of plaintiff's money from London to Vienna, the debiting of his account in London, the letter from the defendant bank, dated April 2 or 4, 1938, informing plaintiff of the transfer. Clearly these causes of action accrued in England, and the English Statute of Limitations applies. As to the seventh cause of action, in which plaintiff seeks damages by reason of defendant's refusal in London to accept from another bank in London for deposit in plaintiff's account in London funds offered to it in London by a third person, in April, 1938, it cannot be seriously contended that this claim arose elsewhere than in England.

In *Wester* v. *Casein Co. of America* (206 N. Y. 506, 514, 515) the Court of Appeals, after reasserting the rule that the " * * * place where a cause of action for a breach of contract arises is generally — almost universally — the place where

the contract is to be performed. The reason why the place of the breach of contract is generally the place of its performance is that unless the place of performance is waived or performance is anticipated it is only at such place that there is a breach or that it can be determined whether there is a breach ", quoted with approval, as it had previously in *Hibernia National Bank* v. *Lacombe* (84 N. Y. 367, 384), from the English case of *Durham* v. *Spence* (L. R. 6 Ex. 46, 52): " ' The cause of action must have reference to some time as well as some place. * * * The cause of action arises when that is not done which ought to have been done; or that is done which ought not to have been done. But the time when the cause of action arises determines, also, the place where it arises, for when that occurs which is the cause of action the place where it occurs is the place where the cause of action arises.' "

Applying this rule to the causes of action challenged, it must be held that they accrued in England not later than April, 1938.

Nor has the English statute been tolled or suspended in favor of the plaintiff. He concededly resided in this State since October, 1938, and, according to English law, was not an " enemy " nor in " enemy territory." (Limitation [Enemies and War Prisoners] Act, 1945, eff. Sept. 3, 1939, 8 & 9 Geo. 6, ch. 16, § 1, subd. [1]; § 2, subd. [1]; § 6, subd. [2]; Trading With the Enemy Act, 1939, 2 & 3 Geo. 6, ch. 89, § 2, subd. [1].)

In *V/O Sovfracht* v. *Gebr van Udens Scheepvaart En Agentuur Maatschappij* ([1943] A. C. 203) the English House of Lords, in 1943, held: " On the main question, it is, of course common ground that an ' alien enemy ' cannot sue in the King's Courts or otherwise take up the position of an actor in British litigation, save under royal license. An alien enemy, in this connexion, does not mean a subject of a State at war with this country, but a person, of whatever nationality, who is carrying on business in, or is voluntarily resident in, the enemy's country * * *." This language was quoted with approval in *H. P. Drewry, S.A.R.L.,* v. *Onassis* (266 App. Div. 292, 297, affd. 291 N. Y. 779).

It follows that the causes of action are barred by the English Statute of Limitations.

There is no merit to plaintiff's contention that the causes of action may be said to have accrued in New York by reason of plaintiff's residence here during the past nine years and the necessity of a demand. As heretofore pointed out, this is not an action to recover a bank deposit, but an action for damages for an alleged wrongful payment on the plaintiff's written order

and a refusal to accept a deposit. In the opening statement of the brief of plaintiff's attorneys they state: "This action is based both on contract and conversion." Thus it is not an action "Where * * * a demand is necessary to entitle a person to maintain an action * * * " (Civ. Prac. Act, § 15.) The contention that a demand was necessary before the action can be said to have accrued is apparently an afterthought, for nowhere in the complaint is a demand alleged; and this being a law action, if a demand were necessary, it should have been alleged in the complaint. In this case the plaintiff knew all of the facts when the causes of action arose in April, 1938. He knew that he had instructed the defendant to deliver his balance to the "Reichsbank." Whatever the reason, and however indefensible the acts of the German authorites, plaintiff knew in 1938, before he left Europe, precisely what he does today with regard to the circumstances alleged in the complaint. By failing to make a demand, he could not prevent the period of limitation from running against causes of action which he was entitled to maintain without a demand (*Tillman* v. *Guaranty Trust Co.,* 253 N. Y. 295, 297; *Classen-Smith* v. *National City Bank,* 290 N. Y. 70, 72, 73).

A comprehensive study of sections 13, 19 and 55 of the Civil Practice Act is contained in the Report of the Law Revision Commission of the State of New York for the year 1943 (N. Y. Legis. Doc., 1943, No. 65 [F]) and it is unnecessary to discuss the history of these statutes and their applicability here. The situation presented in the instant case may be summarized by a quotation from this study contained in footnote 73 on page 42 of the foresaid study: "If the cause of action arose without the state, and under the laws there prevailing, the claim is barred, it is barred here, unless the plaintiff was a resident of this state at the time the cause of action arose. Civil Practice Act, § 13. If the claim is not barred in the state where it arose, though the plaintiff and the defendant are both nonresidents, the New York period will be extended pursuant to section 19. This is so, even though the defendant had never been present in New York."

The action which plaintiff sought to institute here in 1941 would have been timely but was aborted by his failure to secure a warrant of attachment, as he did in this action. His present attempt, however, is too late.

I have, therefore, no alternative but to grant defendant's motion. Submit order.